FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR - 2 2014

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 4:14 CR 00058 JLH |
| v. ) | |
| ) | 18 U.S.C. § 1035 |
| DR. ROBERT BARROW and ) | 18 U.S.C. § 1347 |
| DR. ANGELA BARROW ) | 18 U.S.C. § 1349 |

INDICTMENT

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

### Medicare

1. Medicare was a federal health care program providing benefits to persons who were over 65 or disabled. It was administered by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency under the U.S. Department of Health and Human Services. CMS hired private companies ("carriers") to help administer Medicare, which included receiving, adjudicating, processing, and paying claims under the program.

2. Medicare provided coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Medicare Part B covered outpatient services, including physical therapy.

3. Pinnacle Business Solutions, Inc. was the CMS contracted carrier for Medicare Part B in the State of Arkansas.

4. Health care providers who enrolled in Medicare agreed to abide by its policies, procedures, rules, and regulations. They, along with their agents, employees, or contractors, were also required to abide by all provisions of the Social Security Act, regulations promulgated

under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

5. Medicare was a "health care benefit program," as defined under Title 18, United States Code, Section 24(b).

## BCBS

6. Arkansas Blue Cross and Blue Shield and its associated companies Health Advantage and USAble (collectively "BCBS") were private companies headquartered in Little Rock that provided health insurance coverage, health care networks, and claims administration services for persons residing in the Eastern District of Arkansas and elsewhere.

7. BCBS provided health insurance coverage, networks, or claims services under a number of programs, including, but not limited to, BlueCard, Health Advantage, USAble, Wal-Mart, and the Federal Employee Program.

8. Health care providers that enrolled with BCBS agreed to abide by "claims filing and coding policies" as set out in the BCBS Provider Manual, Provider Newsletters, and website.

9. BCBS was a "health care benefit program," as defined under Title 18, United States Code, Section 24(b).

## Health Insurance Billing

10. Health care providers used a uniform system of coding to report professional services and procedures when billing insurance companies: CPT codes. The American Medical Association published a Current Procedural Terminology Manual, which listed virtually every medical service or procedure in descriptive terms and assigned each one a unique, five-digit CPT code. Health care providers listed these CPT codes on official health insurance claim forms when billing insurers to indicate what services had been provided to a patient.

11. Medicare and BCBS each issued health care providers unique provider identification numbers when they enrolled in the insurance program. Health care providers listed these unique provider identification numbers on official health insurance claim forms when billing insurers to indicate who had performed or ordered the services that had been provided to a patient.

### Defendants

12. Defendants DR. ROBERT BARROW and DR. ANGELA BARROW were husband and wife physicians who together owned and operated a medical clinic named Your Doctor's Office, which was located inside 600 Autumn Road in Little Rock, a one-story office building that they owned.

## COUNT ONE
### Health Care Fraud Conspiracy

13. Paragraphs 1 through 12 of this Indictment are realleged and incorporated by reference as through fully set forth herein.

14. From in or about September 2005 to in or about July 2012, in the Eastern District of Arkansas, Defendants,

DR. ROBERT BARROW and
DR. ANGELA BARROW,

willfully and knowingly conspired and agreed with each other and with others, known to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined under Title 18, United States Code, Section 24(b), that is, Medicare and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

<u>Purpose of the Conspiracy</u>

15. It was the purpose of the conspiracy for Defendants, DR. ROBERT BARROW and DR. ANGELA BARROW, to unlawfully enrich themselves through the submission of false and fraudulent claims to Medicare and BCBS.

<u>Manner and Means</u>

16. The manner and means by which Defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

17. On or about September 30, 2005, DR. ROBERT BARROW signed a contract with a local massage therapist. The contract had several provisions. First, the massage therapist would lease a small office suite inside the 600 Autumn Road building, next door to Your Doctor's Office. Second, the massage therapist would provide "therapy services" on site. Third, DR. ROBERT BARROW would refer patients to the massage therapist for treatment. And fourth, the massage therapist and DR. ROBERT BARROW would share the related proceeds on a 25/75 basis.

18. DR. ROBERT BARROW and DR. ANGELA BARROW thereafter began to refer patients to the massage therapist, whose business was now operating under the name Life-Letics Sports Therapy.

19. The massage therapist's services were then billed to insurers using CPT codes associated with physical therapy even through DR. ROBERT BARROW and DR. ANGELA BARROW knew that the massage therapist was neither trained in nor licensed to perform physical therapy.

20. Before being seen by the massage therapist, Your Doctor's Office and Life-Letics employees were instructed to verify a patient's insurance benefits. This entailed accessing the patient's insurance information online or by phone to confirm that the patient had coverage for physical therapy and to determine the remaining extent of such benefits.

21. After each visit, the massage therapist completed a form listing a patient's name, date of service, and which CPT codes to bill. These forms were then given to Your Doctor's Office employees, where the information was put into official health insurance claim forms that were submitted to health insurance companies under provider numbers assigned to DR. ROBERT BARROW or Your Doctor's Office, regardless of who had actually seen the patient and referred the patient for treatment. The massage therapist's name did not appear on health insurance claim forms. Treatment and billing records were stored on software accessible by Your Doctor's Office and Life-Letics personnel.

22. The massage therapist was told to waive or reduce patient copayments and deductibles, which encouraged more frequent patient visits.

23. In or about 2006, the massage therapist created a website (life-letics.com) to promote the business. Its FAQ section indicated that "we take health/medical insurance. The only one we do not accept is Medicade [sic] (we do accept Medicare.) Your benefits will fall under your therapy benefits."

24. The most frequently billed CPT codes included 97110, 97112, and 97140, which the CPT Manual describes as "therapeutic procedures" requiring "direct (one-on-one) patient contact" by a doctor or therapist.

25. When submitted to Medicare, these CPT codes were appended by a "GP" modifier which indicated that the "services [were] provided under plans of care for physical therapy[.]"

26. Medicare permitted doctors to bill for physical therapy performed by qualified persons working under their direct supervision if, among other things, the persons actually providing the physical therapy met the qualifications of a "physical therapist." These qualifications included,

among others, licensure to practice physical therapy by the State in which the therapist worked and graduation from an accredited physical therapy program.

27. The Medicare Benefit Policy Manual made clear that, under this rule, "services of athletic trainers, massage therapists, recreation therapists, kinesiotherapists,...or any other profession may not be billed as therapy services."

28. When enrolling with BCBS, DR. ROBERT BARROW and DR. ANGELA BARROW agreed not to bill "for services of any assistant or persons working for or under the[ir] direct or indirect supervision...unless such individuals" were "licensed to perform the services[.]"

29. BCBS code-specific guidance further provided that CPT codes 97110, 97112, and 97140 were "RESTRICTED" codes requiring one-on-one, direct patient contact by a physical therapist or doctor.

30. Accordingly, neither Medicare nor BCBS rules allowed billing for physical therapy when the services were actually performed by the massage therapist.

31. Proceeds of physical therapy billing were split on a biweekly basis via checks from Your Doctor's Office to the massage therapist. Individual checks were as high as $14,000, resulting in annual payments to the massage therapist that reached nearly $250,000.

32. As a result of the conspiracy and scheme to defraud set forth above, DR. ROBERT BARROW and DR. ANGELA BARROW fraudulently caused the submission of over $1.2 million in physical therapy claims to Medicare and BCBS.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO to SEVEN
## Health Care Fraud

33. Paragraphs 1 through 12 of this Indictment are realleged and incorporated by reference as through fully set forth herein.

34. From in or about September 2005 to in or about July 2012, in the Eastern District of Arkansas, Defendants,

### DR. ROBERT BARROW and
### DR. ANGELA BARROW,

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined under Title 18, United States Code, Section 24(b), that is, Medicare and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

35. It was the purpose of the scheme and artifice for Defendants, DR. ROBERT BARROW and DR. ANGELA BARROW, to unlawfully enrich themselves through the submission of false and fraudulent claims to Medicare and BCBS.

### Scheme and Artifice

36. Paragraphs 16 through 32 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

37. On or about the dates specified as to each count below, in the Eastern District of Arkansas, Defendants, DR. ROBERT BARROW and DR. ANGELA BARROW, in connection

with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of said health care benefit programs:

| Count | Insurer | Patient | Date | Description of Service | Bill |
|---|---|---|---|---|---|
| Two | Medicare | M.W. | 2/15/2010 | 97112, 97140 | $95 |
| Three | Medicare | M.W. | 3/17/2010 | 97112, 97140 | $85 |
| Four | Medicare | M.W. | 4/23/2010 | 97112, 97140 | $85 |
| Five | BCBS | S.S. | 6/14/2012 | 97110, 97112 (x2), 97140 | $185 |
| Six | BCBS | S.S. | 6/27/2012 | 97110, 97112 (x2), 97140 | $185 |
| Seven | BCBS | S.S. | 6/28/2012 | 97112 (x2), 97140 | $145 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS EIGHT to ELEVEN
False Statement Relating to Health Care Matters

38. Paragraphs 1 through 12 of this Indictment are realleged and incorporated by reference as through fully set forth herein.

39. On or about the dates listed below, in the Eastern District of Arkansas, Defendant,

DR. ROBERT BARROW,

knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact, to wit, that no ultrasound had been performed, in connection with the delivery of and payment for health care services by a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, BCBS:

| Count | Insurer | Patient | Date | Description of Service | Bill |
|---|---|---|---|---|---|
| Eight | BCBS | L.G. | 6/17/2011 | 97035 | $25 |
| Nine | BCBS | L.G. | 6/24/2011 | 97035 | $25 |
| Ten | BCBS | L.G. | 7/1/2011 | 97035 | $25 |
| Eleven | BCBS | L.G. | 7/8/2011 | 97035 | $25 |

All in violation of Title 18, United States Code, Section 1035.